FILED
MAR 29 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

Methodist Healthcare-Memphis Hospitals )
1211 Union Avenue )
Memphis, Tennessee 38104-6619 )
)
)
)
Plaintiff, )
)
Michael O. Leavitt, Secretary of the )
United States Department of Health and )
Human Services )
200 Independence Avenue, S.W. )
Washington, D.C. 20201 )
)
Defendant. )
)

CASE NUMBER   1:06CV00579

JUDGE: James Robertson

DECK TYPE: Administrative Agency Rev.

DATE STAMP: 03/▮/2006

## COMPLAINT

The above-named Plaintiff ("Plaintiff"), by and through its undersigned counsel, states the following by way of Complaint against Michael O. Leavitt, Secretary of the Department of Health and Human Services ("the Secretary"):

### I. INTRODUCTION

1. Plaintiff is a not-for-profit hospital that participates in the Medicare and Medicaid programs. Plaintiff challenges a regulation and policy issued by the Secretary implementing a provision of the Medicare statute that directs the Secretary to make additional Medicare payments to hospitals that serve "a significantly disproportionate number of low-income patients," as well as determinations consistent with that regulation and policy that have been made with respect to Plaintiff's Medicare

{D0097971.DOC / 2}

reimbursement for fiscal years 1998 through 2000. Under the statute, the term "low-income patients" includes patients eligible for medical assistance under a state plan approved under Title XIX of the Social Security Act (the "Medicaid statute"). In computing a hospital's low-income patient percentage for certain time periods, including but not limited to the time period before January 20, 2000, the Secretary excluded hospital days attributable to patients eligible for assistance under a plan approved under Title XIX if the patients belonged to expansion populations and received benefits through a program known as a section 1115 waiver, or demonstration, project. These were patient days that were claimed by Plaintiff on its filed Medicare cost reports and excluded by the Secretary from the calculation of the Plaintiff's disproportionate share payment. The Secretary's regulation, to the extent it precludes Medicare disproportionate share payments based on days attributable to expansion waiver populations, contravenes the plain and unambiguous wording of the governing Medicare statute, is inconsistent with clear congressional intent, and is arbitrary, capricious, an abuse of discretion, and otherwise contrary to law.

## II.   JURISDICTION AND VENUE

2. This action arises under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 et seq. (the "Medicare statute"), the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 et seq., and the Declaratory Judgment Act, 28 U.S.C. 2201.

3. This Court has jurisdiction under 42 U.S.C. § 1395oo(f)(1), 28 U.S.C. § 1331, and 28 U.S.C. § 2201, .

4. Pursuant to 42 U.S.C. § 1395oo(f)(1), venue for Plaintiff is proper in the United States District Court for the District of Columbia.

2

### III. **PARTIES**

5. Plaintiff Methodist Healthcare-Memphis Hospitals, 1211 Union Avenue, Memphis, Tennessee, is an acute care hospital assigned Medicare provider number 44-0049. It served a disproportionate share of low-income patients prior to and including the calendar year 2000.

6. Defendant Michael O. Leavitt is the Secretary of the Department of Health and Human Services, the federal department responsible for the administration of the Medicare and Medicaid programs.

### IV. **THE MEDICARE PROGRAM**

7. Congress enacted the Medicare program (Title XVIII of the Social Security Act) in 1965. As originally enacted, Medicare was a public health insurance program that furnished health benefits to participating individuals once they reached the age of 65. Over the years, it has been expanded to provide health benefits to qualifying disabled persons and to individuals suffering from end-stage renal disease.

8. Among the benefits covered by Medicare are hospital services. For cost reporting years beginning before October 1, 1983, the Medicare program reimbursed hospital services on a "reasonable cost" basis. 42 U.S.C. § 1395f(b). Effective with cost reporting years beginning on or after October 1, 1983, Congress adopted a prospective payment system ("PPS") to reimburse most hospitals, including Plaintiff, for inpatient operating costs. 42 U.S.C. § 1395ww(d). Under PPS, hospitals are paid a fixed amount for each of approximately 520 diagnosis-related groups ("DRGs"), subject to certain payment adjustments.

9. The Secretary has delegated much of the responsibility for administering the Medicare program to the Centers for Medicare and Medicaid Services ("CMS") formerly known as the Health Care Financing Administration (hereinafter collectively referred to as "CMS"). The Secretary, through CMS, has contracted out many of his audit and payment functions under Medicare to organizations (usually insurance companies) known as fiscal intermediaries.

10. At the close of a fiscal year, a provider of services must submit to its fiscal intermediary a "cost report" showing both the costs incurred by it during the fiscal year and the appropriate share of those costs to be apportioned to Medicare. 42 C.F.R. § 413.24(f). The fiscal intermediary is required to analyze and audit the cost report and inform the provider of a final determination of the amount of Medicare reimbursement through a notice of program reimbursement ("NPR"). 42 C.F.R. § 405.1803.

11. A provider dissatisfied with its fiscal intermediary's determination may file an appeal with an administrative body called the Provider Reimbursement Review Board ("PRRB") within 180 days of the date of the NPR. 42 U.S.C. § 1395oo(a).

12. A provider that has filed an appeal with the PRRB may ask the PRRB to determine that it lacks the authority to decide "a question of law or regulations relevant to the matters in controversy." 42 U.S.C. § 1395oo(f)(1). Such a request is generally known as a request for expedited judicial review ("EJR").

13. The PRRB must issue an EJR determination within thirty days of receiving a provider's EJR request and accompanying documents. 42 U.S.C. § 1395oo(f)(1).

14. If the PRRB determines that it lacks the authority to decide the issue raised by the provider in its EJR petition, a provider may obtain judicial review of that issue by filing a lawsuit within 60 days of receipt of the PRRB's EJR determination or, if the PRRB fails to render such determination within 30 days, then a provider may bring a civil action within 60 days after the expiration of the 30-day period. 42 U.S.C. § 1395oo(f)(1).

15. The PRRB's EJR determination is considered a final decision and is not subject to review by the Secretary. 42 U.S.C. § 1395oo(f)(1).

## V.   MEDICAID PROGRAM

16. Congress enacted the Medicaid program (Title XIX of the Social Security Act) in 1965. Medicaid is a cooperative federal-state program that furnishes health care to persons who meet specified eligibility requirements, including low-income status.

17. States participating in the Medicaid program have a substantial amount of discretion in selecting the benefits provided under their Medicaid programs. 42 U.S.C. § 1396d. Nevertheless, all states must furnish certain minimum benefits under their Medicaid program, including inpatient hospital services. 42 U.S.C. §§ 1396a(a)(10)(A), 1396(a)(1).

18. States that participate in the Medicaid program are required to develop a state plan for delivery of medical assistance and submit it to the Secretary for approval. 42 U.S.C. § 1396. This Title XIX plan must comply with certain requirements of the Medicaid statute set forth in 42 U.S.C. § 1396.

19. The State of Tennessee, at all relevant times referred to in this Complaint, had a valid Title XIX plan approved by the Secretary.

## VI.    DEMONSTRATION PROJECTS

20.    Some states provide Title XIX medical assistance under a demonstration project that requires the state both to gain the Secretary's approval of the project and to obtain the Secretary's waiver, pursuant to Section 1115 of the Social Security Act, 42 U.S.C. § 1315, of certain requirements that are otherwise applicable to Medicaid State plans, such as freedom of choice, comparability, and statewide applicability. Such a demonstration project is often referred to as a "section 1115 waiver". The purpose of the section 1115 waiver is to encourage states to develop innovative and efficient methods of delivering medical assistance through experimental projects.

21.    When it enacted the section 1115 waiver provision, Congress, by statutory fiat, proclaimed that valid section 1115 waiver programs were deemed approved under Title XIX. The statute provides that:

> [The] costs of such project which would not otherwise be included as expenditures under section 3, 455, 1003, 1403, 1603, or 1903 as the case may be, and which are not included as part of the costs of projects under section 1110, shall, to the extent and for the period prescribed by the Secretary, be regarded as expenditures under the State plan or plans approved under such title. . . .

42 U.S.C. § 1315(a)(2)(A).

22.    In some cases, section 1115 waivers cover patients who otherwise could have been eligible for Medicaid under the state plan requirements set forth in 42 U.S.C. § 1396a. In other cases, the section 1115 waiver may provide for medical assistance to expanded eligibility populations of low income individuals who could not otherwise be eligible for traditional Medicaid (low income "expansion waiver populations") under existing state plan requirements.

6

23. CMS has acknowledged that one purpose of the section 1115 waiver is to extend Title XIX matching payments to services furnished to populations that otherwise could not have been eligible for traditional Medicaid. CMS has acknowledged that the statute allows for expansion populations to be treated as Medicaid beneficiaries. 65 Fed. Reg. 3136 (Jan. 20, 2000).

24. The State of Tennessee had a valid section 1115 waiver in place during the relevant fiscal years referenced in this Complaint, and provided medical assistance to an expansion waiver population pursuant to that approved demonstration project.

## VII. MEDICARE DISPROPORTIONATE SHARE HOSPITAL ADJUSTMENT

25. When Congress enacted Medicare PPS in 1983, it authorized the Secretary to provide an adjustment to PPS payments for hospitals that served a disproportionate share of low-income patients (the "DSH adjustment"). 42 U.S.C. § 1395ww(d)(5)(C)(i) (1983).

26. The Secretary delegated to CMS the authority to calculate and administer DSH adjustments as part of the PPS reimbursement system. CMS, in turn, contracts out the responsibility to the fiscal intermediaries who notify hospitals of their DSH adjustments in their NPRs.

27. Ordinarily, both the determination of whether a hospital qualifies to receive a DSH adjustment and the fiscal intermediary's determination of the amount of DSH adjustment to which a hospital is entitled are based on the calculation of a DSH "patient percentage" that is statutorily defined as the sum of

7

two fractions. These fractions are sometimes referred to colloquially as the Medicare, or SSI, fraction and the Medicaid fraction.

28. The Medicaid fraction represents the portion of the hospital's total "patient days" that were attributable to inpatients who were eligible for medical assistance during the cost report period under an approved Title XIX (Medicaid) state plan, and is specifically described in the Medicare statute as follows:

> [a] fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a state plan approved under subchapter XIX, but who were not entitled to benefits under Part A of this subchapter, and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II).

29. Because the Medicaid fraction will be larger if there are more patient days in the numerator of the fraction, a larger number of Title XIX (Medicaid) days means a larger DSH adjustment for a hospital.

30. On May 6, 1986, the Secretary issued an interim final regulation to implement the statutory disproportionate share add-on patient (42 C.F.R. § 412.106). See 51 Fed. Reg. 16,772, 16,777 (May 6, 1986); 51 Fed. Reg. 31,454, 31,460 (Sept. 3, 1986).

31. Initially, the Secretary interpreted the Medicare statute to exclude from the calculation of the Medicaid fraction all patient days attributable to patients in an expansion waiver population receiving medical assistance under a section 1115 waiver

8

("section 1115 waiver days"). In fact, in the past, the Secretary issued policy statements and memoranda prohibiting providers from claiming, and intermediaries from counting, section 1115 waiver days in the DSH calculation. For example, CMS issued a policy statement in 1999 that, among other things, prohibited the inclusion of such waiver days in the Medicaid fraction. Program Memorandum No. A-99-62 (December 1999).

32. However, the Secretary issued an Interim Final Rule on January 20, 2000, to specifically address its long-standing policy of excluding section 1115 waiver days from the DSH calculation. 65 Fed. Reg. 3136 (Jan. 20, 2000). In the Interim Final Rule, CMS reversed its position, promulgating a regulation that permitted inclusion of 1115 waiver days in the Medicaid fraction for discharges occurring on or after January 20, 2000, but CMS expressly continued to prohibit the inclusion of such days for patients discharged prior to January 20, 2000. The Final Rule promulgated by the Secretary, now codified at 42 C.F.R. § 412.106(b)(4)(ii), was unchanged from its interim final form, and provides as follows:

> Effective with discharges occurring on or after January 20, 2000, for purposes of counting days under paragraph (b)(4)(i) of this section, hospitals may include all days attributable to populations eligible for Title XIX matching payments through a waiver approved under section 1115 of the Social Security Act.

33. By amending Medicare regulations to prospectively authorize hospitals to include section 1115 waiver days in the calculation of the Medicaid fraction component of the DSH adjustment, the Secretary recognized that section 1115 waiver days are correctly viewed as inpatient days for patients who were eligible for medical assistance under an approved Title XIX State plan, within the meaning of 42 U.S.C.§ 1395ww(d)(5)(F)(vi)(II), and formally published an authoritative construction of the

9

relevant statute to that effect.

34.  The same statutory provision describing the proper calculation of the Medicaid fraction has been continuously in effect at all times relevant to this action, and is applicable to describe and define the calculation of DSH percentages and adjustments both before and after January, 2000.

35.  In computing the Plaintiff's Medicare DSH adjustments for the fiscal years ending December 31, 1998 ("FY 1998"), December 31, 1999 ("FY 1999") and that portion of the fiscal year ending December 31, 2000 that occurred prior to January 20, 2000 ("FY 2000"), the Medicare intermediary excluded from the numerator of the Medicaid fraction those inpatient days that were part of an expanded waiver group under section 1115. The exclusion of these Title XIX waiver days unlawfully reduced the Plaintiff's DSH adjustments.

36.  For FY 1998, FY 1999 and FY 2000, the Plaintiff filed timely appeals with the PRRB. In those appeals, Plaintiff challenged CMS's policy and the determination of its DSH adjustments for those years which used a formula that excluded section 1115 waiver days from the Medicaid fraction of the DSH calculation. Plaintiff sought to have the section 1115 waiver days that were excluded by the intermediary included as Title XIX patient days in computing its DSH adjustments for the years in question.

37.  By letters dated January 26, 2006, Plaintiff filed requests for EJR with the PRRB for its appeals for FY 1998 and FY 1999, and by letter dated February 10, 2006, it filed a request for EJR for its appeal for FY 2000. A copy of Plaintiff's EJR requests is attached as Exhibit "A".

38. On February 2, 2006, the PRRB granted Plaintiff's request for EJR for the appeals for FY 1998 and FY 1999, and on March 7, 2006, it granted the request for EJR for its appeal for FY 2000. A copy of the PRRB's EJR decisions is attached as Exhibit "B".

39. This suit was timely filed within 60 days of the PRRB's grant of EJR. Thus, this case is ripe for judicial review, and the court has jurisdiction over this case, under 42 U.S.C. § 1395oo(f)(1).

## COUNT I
## VIOLATION OF THE MEDICARE STATUTE

40. Plaintiff realleges and incorporates by reference paragraphs 1-39 as if fully set forth below.

41. Plaintiff claimed section 1115 waiver days on its filed Medicare cost reports. The intermediary excluded those days from the numerator of the Medicaid fraction used in calculating Plaintiff's DSH adjustment. Plaintiff seeks reimbursement with respect to FYs 1998-2000.

42. The Secretary's construction of 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) (describing the Medicaid fraction of the DSH calculation) as applied to the plaintiff hospital's cost reports for fiscal years 1998-2000 is unlawful because it contravenes both the statute's plain meaning and its legislative history, and is inconsistent with the Secretary's present construction of the law to permit inclusion of section 1115 waiver days in computing the Medicaid fraction and a hospital's DSH adjustment..

43. Under the Medicare statute, so long as a patient is eligible for medical assistance under a state plan approved under Title XIX, for a particular day for which the

11

patient receives inpatient hospital services, that patient day must be counted in the Medicaid fraction of the DSH calculation.

44. The section 1115 waiver program in Tennessee is, as a matter of law, a state plan approved under Title XIX for purposes of the Medicare DSH adjustment.

45. CMS and the Secretary concede that the section 1115 waiver program in Tennessee is a state plan approved under Title XIX for purposes of the Medicare DSH adjustment, because the current policy of CMS, by way of formal regulation and official pronouncement, as outlined above, is to include section 1115 waiver days in the DSH calculation starting as of January 20, 2000 and thereafter.

46. Neither CMS nor the Secretary has ever offered a valid reason for why providers, with properly pending appeals or open cost report years, should not have section 1115 waiver days included in their DSH calculations for cost reporting periods (or portions thereof) prior to January 20, 2000.

47. The Secretary's current policy, insofar as it allows section 1115 waiver days to be included in the DSH calculation, is statutorily correct.

48. The Secretary's policy of excluding section 1115 waiver days from the DSH calculation for cost reporting periods (or portions thereof) prior to January 20, 2000 violates the Medicare statute and is unlawful.

49. The Secretary's exclusion of section 1115 waiver days from the DSH calculation conflicts with legislative intent. The purpose of the DSH adjustment is to compensate hospitals for the additional cost associated with furnishing care to a large number of indigent patients. The expansion waiver population in Tennessee consists entirely of indigent persons. The fact that a patient meets eligibility standards under a

valid waiver program confirms the patient's indigent status.

50. The Secretary's position is unlawful. The fiscal intermediary wrongfully excluded the section 1115 waiver days from the calculation of Plaintiff's DSH adjustment for the cost reporting periods that are the subject of this Complaint.

51. The Medicare statute requires the Secretary, CMS, and the fiscal intermediary to include section 1115 waiver days in the DSH calculation, and the fiscal intermediary's exclusion of the section 1115 waiver days from the DSH calculation is a direct violation of the Medicare statute.

## COUNT II
## ARBITRARY AND CAPRICIOUS AGENCY ACTION

52. Plaintiff realleges and incorporates by reference paragraphs 1-51 herein as if fully set forth below.

53. The fiscal intermediary's exclusion of the section 1115 waiver days from the DSH calculation for Plaintiff's fiscal years 1998 through 2000, as well as CMS's and the Secretary's policy in support of that exclusion, is inconsistent with the Secretary's own construction of law inherent in current federal regulations, and is arbitrary, capricious, an abuse of discretion, and otherwise contrary to law, in contravention of the standards of Section 706 of the Administrative Procedure Act, 42 U.S.C. § 706.

## COUNT III
## THE SECRETARY'S REGULATION IS UNLAWFUL AND INVALID

54. Plaintiff realleges and incorporates by referencing paragraphs 1-51 as if fully set forth below.

55. The Secretary's regulation at 42 C.F.R. § 412.106(b)(4)(ii) is arbitrary and capricious, an abuse of discretion, and contrary to statutory law, and is therefore invalid, insofar as that regulation prohibits inclusion of section 1115 waiver days representing patient discharges prior to January 20, 2000, in calculating the Medicaid fraction and DSH percentage.

**WHEREFORE**, Plaintiff requests relief as follows:

(1) A declaration by the Court that the Secretary's regulation, 42 C.F.R. § 412.106(b)(4)(ii) is unlawful insofar as it excludes section 1115 waiver days from the numerator of the Medicaid fraction in the DSH calculation prior to January 20, 2000, in contravention of the plain meaning of 42 U.S.C. § 1395ww(d)(5)(F)(vi);

(2) A declaration by the Court that the portion of 42 C.F.R. § 412.106(b)(4)(ii) that excludes section 1115 waiver days from the DSH calculation prior to January 20, 2000 is arbitrary, capricious, unreasonable, unlawful, and invalid;

(3) A declaration that the fiscal intermediary's and the Secretary's exclusion of section 1115 waiver days from the calculation of the Medicaid fraction and Plaintiff's DSH adjustment for its fiscal years 1998 through 2000 was arbitrary, capricious, and contrary to statutory law.

(4) An order requiring that the Secretary, within ninety days of receipt of Plaintiff's documentation, (i) recalculate the Plaintiff's Medicare disproportionate patient percentage for the cost reporting periods at issue based on the foregoing and based upon information to be submitted by Plaintiff with respect to all patient days for which a patient was eligible for medical benefits pursuant to a state plan approved under Title XIX, and (ii) pay the Plaintiff the additional amounts due under the resulting DSH

recalculation, plus interest in accordance with 42 U.S.C. § 1395oo(f)(2);

(5) A declaration that this Court shall retain jurisdiction in this matter until the Secretary's recalculation of Plaintiff's Medicare DSH percentages and subsequent payment to Plaintiff of the additional amounts due is complete, including the additional amounts based upon the inclusion of section 1115 waiver days;

(6) An order requiring the Secretary to submit for the Court's approval instructions to Plaintiff's Medicare fiscal intermediary for the recalculation of DSH adjustments in accordance with law;

(7) Attorneys fees and costs of suit incurred by Plaintiff as permitted by the law; and

(8) Such other relief as this Court deems just and appropriate.

Respectfully submitted,

*Edith S. Marshall*
Edith S. Marshall
(D.C. Bar No. 328310)
Mary Susan Philp
(D.C. Bar No. 295287)
POWERS PYLES SUTTER & VERVILLE PC
1875 Eye Street, N.W., 12th Floor
Washington, D.C. 20006
(202) 466-6550

Attorneys for Plaintiff Methodist Healthcare-Memphis Hospitals

Dated: 3/29/, 2006