**POWERS PYLES SUTTER & VERVILLE PC**
ATTORNEYS AT LAW

Twelfth Floor
1875 Eye Street, NW
Washington, DC  20006-5409
Phone: (202) 466-6550
Fax: (202) 785-1756
www.ppsv.com

MARY SUSAN PHILP
(202) 872-6735
Susan.Philp@ppsv.com

January 26, 2006

**VIA FEDERAL EXPRESS**

Suzanne Cochran, Esq., Chairperson
Provider Reimbursement Review Board
2520 Lord Baltimore Drive, Suite L
Baltimore, MD 21244-2670

Re:  **REQUEST FOR EXPEDITED JUDICIAL REVIEW**
     Methodist Hospitals of Memphis;
     Provider No. 44-0049;
     FYE December 31, 1998;
     PRRB Case No. 03-0180

Dear Ms. Cochran:

The Provider, Methodist Hospitals of Memphis ("Provider"), hereby requests that the Board grant expedited judicial review ("EJR") as to the disproportionate share hospital ("DSH") payment (Section 1115 waiver days) issue in the above appeal pursuant to Section 1878(f)(1) of the Social Security Act ("the Act").

As discussed below, EJR should be granted because the Provider challenges the policy of the Secretary of Health and Human Services ("the Secretary") and the Centers for Medicare and Medicaid Services ("CMS") which excludes Section 1115 waiver days from the DSH payment calculation for patient discharges prior to January 20, 2000. That policy was reflected in the determination of the Provider's intermediary in this appeal and was the subject of formal CMS pronouncements, including Program Memorandum A-99-62, which, subject to very limited exceptions, indicated that Section 1115 waiver days should be excluded from the DSH calculation.[1] In addition, on January 20, 2000, CMS issued a regulation that instructed intermediaries to include Section 1115 waiver days in the DSH calculation, but only prospectively. 42 C.F.R. § 412.106(b)(4)(ii).[2] This CMS policy and the regulation violate the Medicare statute. 42 U.S.C. § 1395ww(d).

---

[1] A copy of Program Memorandum A-99-62 is attached as Exhibit 1.
[2] A copy of 42 C.F.R. § 412.106(b)(4)(ii) is attached as Exhibit 2.

POWERS, PYLES, SUTTER & VERVILLE PC

Suzanne Cochran, Esq., Chairperson
January 26, 2006
Page 2

Because the Board lacks the authority to decide questions involving the validity of a Medicare regulation or controlling CMS policy, EJR is appropriate. Furthermore, the Board has previously determined that it was without authority to decide the precise legal question raised in the present appeal and granted EJR in at least two cases. Specifically, the Board granted the providers' request for EJR in the Oregon Waiver Days Group Appeal, PRRB Case No. 00-3891G, and in the Tennessee 96-00 TennCare Sub-Group Appeal, PRRB Case No. 03-1162G. Both cases involved the validity of CMS's policy of excluding Section 1115 waiver days from the DSH calculation, and, in fact, the latter case involved the same State Medicaid program waiver that is at issue here. The Provider requests that the Board follow its determination in these cases and grant EJR in the instant case.

## I.    FACTUAL AND LEGAL BACKGROUND

### A.    Medicare DSH Calculation

Since 1983, the Medicare program has paid most hospitals for the operating costs of inpatient hospital services under a prospective payment system ("PPS"). 42 U.S.C. § 1395ww(d)(1)-(5); 42 C.F.R. Part 412. Under PPS, Medicare pays hospitals a standardized amount per case subject to certain payment adjustments. Id. A hospital that serves a disproportionate share of low-income patients, or a DSH, is also entitled to an upward adjustment to the Medicare PPS payments. See 42 U.S.C. § 1395ww(d)(5)(F).

The amount of the Medicare DSH payment due to a hospital is determined, in part, by its "disproportionate patient percentage" ("DSH patient percentage"), which is a proxy for the Provider's utilization by low-income patients. See 42 U.S.C. § 1395ww(d)(5)(F)(v). The DSH patient percentage is defined as the sum of two fractions expressed as percentages. 42 U.S.C. § 1395ww(d)(5)(F)(vi). One of these fractions is commonly known as the Medicaid percentage. The numerator of the fraction used to compute the Medicaid percentage consists of the number of the Provider's patient days attributable to patients who were "eligible for medical assistance under a State plan approved under Title XIX, but who were not entitled to benefits under Part A of [Medicare]." 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II).

### B.    Section 1115 Waiver Provision and TennCare

Section 1115 of the Act allows the Secretary to approve State research and demonstration projects that promote the objectives of the Title XIX Medicaid program. 42 U.S.C. § 1315. Section 1115(a)(1) authorizes the Secretary to waive the requirements of section 1902 of the Act, which contains Medicaid State plan requirements, including requirements as to eligible populations. 42 U.S.C. § 1315(a)(1). Section 1115(a)(2)(A) allows a State to receive federal matching for medical assistance, including medical assistance provided to expanded eligibility

{D0091114.DOC / 1}

POWERS, PYLES, SUTTER VERVILLE PC

Suzanne Cochran, Esq., Chairperson
January 26, 2006
Page 3

populations, for which the State would not ordinarily be entitled to receive federal matching. 42 U.S.C. § 1315(a)(2).

Under some Section 1115 waivers, the State furnishes medical assistance to a population that otherwise could have been made eligible for Medicaid; under others, the State furnishes medical assistance to expanded eligibility populations that could not otherwise have been made eligible for Medicaid. As stated by the Secretary, "the statute allows for the expansion populations to be treated as Medicaid beneficiaries." 65 Fed. Reg. 3137 (Jan. 20, 2000).

The State of Tennessee first received approval for its Section 1115 demonstration project, called TennCare, on November 19, 1993. On January 1, 1994, Tennessee became the first state to move its Medicaid program enrollees to a statewide demonstration project. In addition to Medicaid eligible persons, TennCare offered coverage to expansion populations of uninsured and uninsurable persons, regardless of income, who would not have been eligible for Medicaid under the program as it existed prior to the waiver.[3]

C.    CMS Treatment of Section 1115 Waiver Days Under DSH

Until early 2000, the Medicare regulations did not specifically address the treatment of Section 1115 waiver days under DSH. See 42 C.F.R. § 412.106 (1999). In 1999, however, CMS issued Program Memorandum A-99-62.[4] This memorandum instructed intermediaries, within certain parameters, to allow the inclusion of "ineligible waiver or demonstration population days," but only to the extent that the intermediaries had previously allowed their inclusion, i.e., allowing hospitals which had previously received payment for such days to be held harmless. To the extent that the very narrow parameters of Program Memorandum A-99-62 were not met, however, Section 1115 waiver days were excluded from the DSH calculation.

On January 20, 2000, CMS issued an "interim final rule with comment period" to address the treatment under DSH of Section 1115 waiver days. 65 Fed. Reg. 3136 (Jan. 20, 2000). Through this interim final rule, CMS established that, effective with discharges occurring on or after January 20, 2000, hospitals may include the patient days of all populations eligible for Title XIX matching payments through a State's Section 1115 waiver in calculating the Medicare DSH adjustment. 65 Fed. Reg. 3136-37; 65 Fed. Reg. 47086. The implementing regulation states:

> Effective with discharges occurring on or after January 20, 2000, for purposes of counting days under paragraph (b)(4)(i) of this section, hospitals may include all days attributable to populations eligible for Title XIX matching payments through a waiver approved under section 1115 of the Social Security Act.

---

[3] Exhibit 3 (Tennessee Statewide Health Reform Demonstration Fact Sheet).
[4] "Clarification of Allowable Medicaid Days in the Medicare Disproportionate Share Hospital (DSH) Adjustment Calculation," Program Memorandum A-99-62 (Dec. 1, 1999).

POWERS, PYLES, SUTTER & VERVILLE PC

Suzanne Cochran, Esq., Chairperson
January 26, 2006
Page 4

42 C.F.R. § 412.106(b)(4)(ii).  Thus, CMS's new policy allowing the inclusion of Section 1115 waiver days in the DSH calculation was effective for discharges occurring on or after January 20, 2000, but not with respect to discharges occurring prior to that date.

       D.     Provider's Position

      The Provider contends that the plain language of the Act requires the inclusion in the DSH calculation of all Section 1115 waiver days.  As noted above, the statute provides that the numerator of the DSH Medicaid fraction include days for patients who were "eligible for medical assistance under a State Plan approved under Title XIX."  42 U.S.C. § 1395ww(d)(5) (F)(vi)(II).  Thus, the DSH calculation should clearly include all patients who were eligible for medical assistance under a Medicaid State Plan implemented through a Section 1115 waiver, including patients in expansion populations.  Therefore, CMS's policy of excluding Section 1115 waiver days from the DSH calculation prior to January 20, 2000, as reflected in Program Memorandum A-99-62 and CMS regulations at 42 C.F.R. § 412.106(b)(4)(ii), violates the Act and is invalid.

      During the fiscal year at issue in this appeal, the Provider provided services to patients who were eligible for Medicaid payment under the TennCare program.  When the intermediary determined the amount of the Provider's DSH payment, it excluded days attributable to patients covered under the Section 1115 waiver.  Therefore, the Provider has been under-reimbursed as a result of the intermediary's application of the invalid CMS policy.  Attached as Exhibit 4 is a calculation of the estimated reimbursement impact of the intermediary's exclusion of the Section 1115 waiver days, based on the information currently available to the Provider.

## II.    THE BOARD SHOULD GRANT EJR

      Under Section 1878(f)(1) of the Act, 42 U.S.C. § 1395oo(f)(1), the Board may grant EJR as to an intermediary determination that involves a question of the validity of a law, regulation, or controlling CMS policy which the Board lacks authority to decide.  See also 42 C.F.R. § 405.1842.  As discussed above, this appeal involves the Provider's challenge to CMS's policy, as reflected in CMS pronouncements and regulations, that excluded Section 1115 waiver days from the DSH calculation prior to January 20, 2000; this matter is, therefore, properly the subject of EJR.

      We note that the Board has previously granted EJR in at least two cases that also involved the validity of CMS's policy regarding Section 1115 waiver days.  First, EJR was granted in the Oregon Waiver Days Group Appeal, PRRB Case No. 00-3891G.  That case subsequently came before the United States Court of Appeals for the Ninth Circuit, which last year ruled that Section 1115 waiver days must be included in the Medicaid fraction of the DSH

{D0091114.DOC / 1}

POWERS, PYLES, SUTTER & VERVILLE PC

Suzanne Cochran, Esq., Chairperson
January 26, 2006
Page 5

calculation. <u>Portland Adventist Medical Center v. Thompson</u>, Medicare and Medicaid Guide (CCH) ¶ 301,592 (9th Cir. Mar. 2, 2005).

Second, the Board also granted EJR in a case involving TennCare program waiver days. Tennessee 96-00 TennCare Sub-Group Appeal, PRRB Case No. 03-1162G. The federal district court for the District of Columbia recently ruled in favor of the Tennessee hospitals in that case, finding that the TennCare waiver days should be included in the DSH calculation. <u>Cookeville Regional Medical Center, et al. v. Thompson</u>, Civil Action No. 04-1053 (D.D.C. Oct. 28, 2005), *appeal docketed*, No. 05-5495 (D.C. Cir. Jan. 5, 2006).

The situation presented here is identical to that involved in these previous appeals. Accordingly, the same result should apply here, and the Board should grant the Provider's request for EJR.

Finally, we note that this appeal involves only a legal issue, <u>i.e.</u>, the validity of a CMS regulation and policy. There are no factual issues in dispute. Furthermore, the Board has jurisdiction in this appeal.

For the foregoing reasons, the Provider requests that the Board grant EJR as to the Provider's challenge to the exclusion of Section 1115 waiver days from the DSH calculation.

Sincerely,

Mary Susan Philp

Enclosures

Cc (w/enc.):    Gary Gerber, TriSpan Health Services (via Federal Express)
                Wilson Leong, Blue Cross Blue Shield Association
                Michael Nesbit

Cc (w/o enc.):  Lisa Ogilvie (via facsimile)

{D0091114.DOC / 1}