Case 1:06-cv-00579-RJL   Document 1-3   Filed 03/29/2006   Page 1 of 5

services furnished to program beneficiaries during the reporting period (from intermediary records). *For final settlement, report on line 25.01 the amount on line 5.99 of Worksheet M-5.*

*Line 26*—Enter the total amount due to/from the program (lines 24 minus line 25). Transfer this amount to Worksheet S, Part II, column 3, line 9.

*Line 27*—Enter the program reimbursement effect of protested items. The reimbursement effect of the nonallowable items is estimated by applying reasonable methodology which closely approximates the actual effect of the item as if it had been determined through the normal cost finding process. (See § 115.2.) A schedule showing the supporting details and computations must be attached.

36-224                                                      Rev. 6

**3666. WORKSHEET M-5 - ANALYSIS OF PAYMENTS TO HOSPITAL-BASED RHC/FQHC SERVICES RENDERED TO PROGRAM BENEFICIARIES**

Complete this worksheet for Medicare interim payments only. If you have more than one hospital-based RHC/FQHC, complete a separate worksheet for each facility.

Complete the identifying information on lines 1 through 4. The remainder of the worksheet is completed by your fiscal intermediary.

*Line Descriptions*

*Line 1*—Enter the total program interim payments paid to the outpatient rehabilitation provider. The amount entered reflects the sum of all interim payments paid on individual bills (net of adjustment bills) for services rendered in this cost reporting period. The amount entered includes amounts withheld from the component's interim payments due to an offset against overpayments to the component applicable to prior cost reporting periods. It does not include any retroactive lump sum adjustment amounts based on a subsequent revision of the interim rate, or tentative or net settlement amounts, nor does it include interim payments payable.

*Line 2*—Enter the total program interim payments payable on individual bills. Since the cost in the cost report is on an accrual basis, this line represents the amount of services rendered in the cost reporting period, but not paid as of the end of the cost reporting period. It does not include payments reported on line 1.

*Line 3*—Enter the amount of each retroactive lump sum adjustment and the applicable date.

*Line 4*—Transfer the total interim payments to the title XVIII Worksheet M-3, line 25.

DO NOT COMPLETE THE REMAINDER OF WORKSHEET M-5. LINES 5 THROUGH 7 ARE FOR INTERMEDIARY USE ONLY.

*Line 5*—List separately each tentative settlement payment after desk review together with the date of payment. If the cost report is re-opened after the Notice of Program Reimbursement (NPR) has been issued, report all settlement payments prior to the current re-opening settlement on line 5.

*Line 6*—Enter the net settlement amount (balance due to the provider or balance due to the program) for the NPR, or, if this settlement is after a reopening of the NPR, for this reopening.

NOTE: On lines 3, 5, and 6, when an amount is due from the provider to the program, show the amount and date on which the provider agrees to the amount of repayment, even though total repayment is not accomplished until a later date.

*Line 7*—Enter the sum of the amounts on lines 4, 5.99, and 6 in column 2. The amount in column 2 must equal the amount on Worksheet M-3, line 26.

Rev. 6                                                      36-225

---

[¶ 150,932]   Medicaid Days in Medicare DSHs.

*Program Memorandum,* HCFA-Pub. 60A, No. A-99-62, December 1, 1999.

### Medicare: Disproportionate Share Hospitals

**Prospective payment system—Disproportionate share hospitals—Calculating Medicaid days.**—Calculation of Medicaid days in Medicare disproportionate share hospitals (DSHs) depends on whether the patient, not the hospital is eligible for Medicaid. A Medicaid day is applicable for days the patient is eligible for Medicaid even if Medicaid did not make payment for any services. A day does not count against the Medicare DSH adjustment if the same day is also a Medicaid day. Certain errors made by hospitals in counting for DSH adjustments will be held harmless prior to Jan. 1, 2000.

See ¶ 4260.

06-0579

FILED
MAR 29 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

[Text of Memorandum]

SUBJECT: Clarification of Allowable Medicaid Days in the Medicare Disproportionate Share Hospital (DSH) Adjustment Calculation—ACTION

A review of practices and policies regarding Medicare disproportionate share payment determinations led HCFA to conclude that it is necessary to clarify the definition of eligible Medicaid days in Medicare disproportionate share policy and communicate this information to fiscal intermediaries, hospitals, Medicaid State agencies, and Medicaid managed care organizations. **This clarification applies to cost reporting periods beginning on or after January 1, 2000.** The purpose of this memorandum is to address those details that may need clarification and also to communicate the hold harmless position for cost reporting periods beginning before January 1, 2000. A similar memorandum will be sent to the Medicaid State agencies.

## CLARIFICATION FOR COST REPORTING PERIODS BEGINNING ON OR AFTER JANUARY 1, 2000

### Background

Under section 1886(d)(5)(F) of the Social Security Act, the Medicare disproportionate share patient percentage is made up of two computations. The first computation includes patient days that were furnished to patients who, during a given month, were entitled to both Medicare Part A and Supplemental Security Income (SSI) (excluding State supplementation). This number is divided by the number of covered patient days utilized by patients under Medicare Part A for that same period. The second computation includes patient days associated with beneficiaries who were eligible for medical assistance (Medicaid) under a State plan approved under Title XIX but who were not entitled to Medicare Part A. (See 42 CFR 412.106(b)(4).) This number is divided by the total number of patient days for that same period.

### Included Days

In calculating the number of Medicaid days, the hospital must determine whether the patient was eligible for Medicaid under a State plan approved under Title XIX on the day of service. If the patient was so eligible, the day counts in the Medicare disproportionate share adjustment calculation. The statutory formula for "Medicaid days" reflects several key concepts. First, the focus is on the *patient's* eligibility for Medicaid benefits as determined by the State, not the *hospital's* "eligibility" for some form of Medicaid payment. Second, the focus is on the patient's eligibility for *medical* assistance under an approved Title XIX State plan, not the patient's eligibility for *general* assistance under a State-only program. Third, the focus is on eligibility for *medical assistance under an approved Title XIX State plan*, not medical assistance under a State-only program or other program. Thus, for a day to be counted, the patient must be eligible on that day for medical assistance benefits under the Federal-State cooperative program known as Medicaid ( under an approved Title XIX State plan). In other words, for purposes of the Medicare disproportionate share adjustment calculation, the term "Medicaid days" refers to days on which the patient is eligible for medical assistance benefits under an approved Title XIX State plan. The term "Medicaid days" does *not* refer to all days that have some relation to the Medicaid program, through a matching payment or otherwise; if a patient is *not* eligible for medical assistance benefits under an approved Title XIX State plan, the patient day cannot become a "Medicaid day" simply by virtue of some other association with the Medicaid program.

HCFA-Pub. 60A

Medicaid days, for purposes of the Medicare disproportionate share adjustment calculation, include all days during which a patient is eligible, under a State plan approved under Title XIX, for Medicaid benefits, even if Medicaid did not make payment for any services. Thus, Medicaid days include, but are not limited to, days that are determined to be medically necessary but for which payment is denied by Medicaid because the provider did not bill timely, days that are beyond the number of days for which a State will pay, days that are utilized by a Medicaid beneficiary prior to an admission approval but for which a valid enrollment is determined within the prescribed period, and days for which payment is made by a third party. In addition, we recognize in the calculation days that are utilized by a Medicaid beneficiary who is eligible for Medicaid under a State plan approved under Title XIX through a managed care organization (MCO) or health maintenance organization (HMO). However, in accordance with 42 CFR 412.106(b)(4), a day does not count in the Medicare disproportionate share adjustment calculation if the patient was entitled to both Medicare Part A and Medicaid on that day. Therefore, once the eligibility of the patient for Medicaid under a State plan approved under Title XIX has been verified, you must determine whether any of the days are dual entitlement days and, to the extent that they are, subtract them from the other days in the calculation.

### Excluded Days

Many States operate programs that include both State-only and Federal-State eligibility groups in an integrated program. For example, some States provide medical assistance to bene-

¶ **150,932**

Case 1:06-cv-00579-RJL    Document 1-3    Filed 03/29/2006    Page 3 of 5

ficiaries of State-funded income support programs. These beneficiaries, however, are not eligible for Medicaid under a State plan approved under Title XIX, and, therefore, days utilized by these beneficiaries do not count in the Medicare disproportionate share adjustment calculation. If a hospital is unable to distinguish between Medicaid beneficiaries and other medical assistance beneficiaries, then it must contact the State for assistance in doing so.

In addition, if a given patient day affects the level of *Medicaid* DSH payments *to the hospital* but the patient is not eligible for Medicaid under a State plan approved under Title XIX on that day, the day is not included in the *Medicare* DSH calculation.

It should be noted that the types of days discussed above are not necessarily the only types of excluded days. Please see the attached chart, which summarizes some, but not necessarily all, of the types of days to be excluded from (or included in) the Medicare DSH adjustment calculation.

To provide consistency in both components of the calculation, any days that are added to the Medicaid day count must also be added to the total day count, to the extent that they have not been previously so added.

Regardless of the type of allowable Medicaid day, the hospital bears the burden of proof and must verify with the State that the patient was eligible under one of the allowable categories during each day of the patient's stay. The hospital is responsible for and must provide adequate documentation to substantiate the number of Medicaid days claimed. Days for patients that cannot be verified by State records to have fallen within a period wherein the patient was eligible for Medicaid as described in this memorandum cannot be counted.

## HOLD HARMLESS FOR COST REPORTING PERIODS BEGINNING BEFORE JANUARY 1, 2000

In accordance with the hold harmless position communicated by HCFA on October 15, 1999, for cost reporting periods beginning before January 1, 2000, you are not to disallow, within the parameters discussed below, the portion of Medicare DSH adjustment payments previously made to hospitals attributable to the erroneous inclusion of general assistance or other State-only health program, charity care, Medicaid DSH, and/or ineligible waiver or demonstration population days in the Medicaid days factor used in the Medicare DSH formula. This is consistent with HCFA's determination that hospitals and intermediaries relied, for the most part, on Medicaid days data obtained from State Medicaid agencies to compute Medicare DSH payments and that some of those agencies commingled the types of otherwise ineligible days listed above with Medicaid Title XIX days in the data transmitted to hospitals and/or intermediaries. Although HCFA has decided to allow the hospitals to be held harmless for receiving additional payments resulting from the erroneous inclusion of these types of otherwise ineligible days, this decision is not intended to hold hospitals harmless for any other aspect of the calculation of Medicare DSH payments or any other Medicare payments.

### Hospitals That Received Payments Reflecting the Erroneous Inclusion of Days at Issue

In practical terms this means that you are not to reopen any cost reports for cost reporting periods beginning before January 1, 2000 to disallow the portions of Medicare DSH payments attributable to the erroneous inclusion of general assistance or other State-only health program, charity care, Medicaid DSH, and/or ineligible waiver or demonstration population days if the hospital received payments for those days based on those cost reports. If, prior to the issuance of this Program Memorandum, you reopened a settled cost report to disallow the portion of Medicare DSH payment attributable to the inclusion of these types of days, reopen that cost report again and refund the amounts (including interest) collected. Do not, however, pay the hospitals interest on the amounts previously recouped as result of the disallowance. Furthermore, on or after October 15, 1999, you are not to accept reopening requests for previously settled cost reports or amendments to previously submitted cost reports pertaining to the inclusion of these types of days in the Medicare DSH formula.

For cost reporting periods beginning before January 1, 2000, you are to continue to allow these types of days in the Medicare DSH calculation for all open cost reports only in accordance with the practice followed for the hospital at issue before October 15, 1999 (i.e., for open cost reports, you are to allow only those types of otherwise ineligible days that the hospital received payment for in previous cost reporting periods settled before October 15, 1999). For example, if, for a given hospital, a portion of Medicare DSH payment was attributable to the erroneous inclusion of general assistance days for only the out-of-State or HMO population in cost reports settled before October 15, 1999, you are to include the ineligible waiver days for only that population when settling open cost reports for cost reporting periods beginning before January 1, 2000. However, the actual number of general assistance and other State-only health program, charity care, Medicaid DSH, and/or ineligible waiver or demonstration days, as well as Medicaid Title XIX days, that you allow for the open cost reports must be supported by

auditable documentation provided by the hospital.

### Hospitals That Did Not Receive Payments Reflecting the Erroneous Inclusion of Days at Issue

If a hospital did not receive any payment based on the erroneous inclusion of general assistance or other State-only health program, charity care, Medicaid DSH, and/or waiver or demonstration population days for cost reports that were settled before October 15, 1999, and the hospital never filed a jurisdictionally proper appeal to the Provider Reimbursement Review Board (PRRB) on this issue, you are not to pay the hospital based on the inclusion of these types of days for any open cost reports for cost reporting periods beginning before January 1, 2000. Furthermore, on or after October 15, 1999, you are not to accept reopening requests for previously settled cost reports or amendments to previously submitted cost reports pertaining to the inclusion of these types of days in the Medicare DSH formula.

If, for cost reporting periods beginning before January 1, 2000, a hospital that did not receive payments reflecting the erroneous inclusion of otherwise ineligible days filed a jurisdictionally proper appeal to the PRRB *on the issue of the exclusion of these types of days from the Medicare DSH formula* before October 15, 1999, reopen the cost report at issue and revise the Medicare DSH payment to reflect the inclusion of these types of days as Medicaid days. If there are any questions or concerns regarding the qualifications for a "jurisdictionally proper appeal", please submit them in writing before rendering a decision in a specific case to Charles Booth, Director, Financial Services Group, Office of Financial Management, 7500 Security Boulevard, Location C3-14-16, Baltimore, Maryland 21244-1850. Where, for cost reporting periods beginning before January 1, 2000, a hospital filed a jurisdictionally proper appeal to the PRRB on the issue of the exclusion of these types of days from the Medicare DSH formula *on or after* October 15, 1999, reopen the *settled* cost report at issue and revise the Medicare DSH payment to reflect the inclusion of these types of days as Medicaid days, but only if the hospital appealed, before October 15, 1999, the denial of payment for the days in question in previous cost reporting periods. The actual number of these types of days that you use in this revision must be properly supported by adequate documentation provided by the hospital. Do not reopen a cost report and revise the Medicare DSH payment to reflect the inclusion of these types of days as Medicaid days if, on or after October 15, 1999, a hospital added the issue of the exclusion of these types of days to a jurisdictionally proper appeal already pending before PRRB on *other* Medicare DSH issues or *other* unrelated issues.

You are to continue paying the Medicare DSH adjustment reflecting the inclusion of general assistance or other State-only health program, charity care, Medicaid DSH, and/or waiver or demonstration population days for all open cost reports for cost reporting periods beginning before January 1, 2000, to any hospital that, before October 15, 1999, filed a jurisdictionally proper appeal to the PRRB specifically for this issue on *previously* settled cost reports.

Finally, you are reminded that, if a hospital has filed a jurisdictionally proper appeal with respect to the HCFA 97-2 ruling and the hospital has otherwise received payment for the portion of Medicare DSH adjustment attributable to the inclusion of general assistance or other State-only health programs, charity care, Medicaid DSH, and/or ineligible waiver or demonstration population days based on its *paid* Medicaid days, include these types of *unpaid* days in the Medicare DSH formula when revising the cost reports affected by the HCFA 97-2 appeal.

The *effective date* for this Program Memorandum (PM) is for cost reporting periods beginning on or after January 1, 2000.

The *implementation date* for this PM is January 1, 2000.

Funding is available through a Supplemental Budget Request for costs required for implementation.

PM may be discarded after January 31, 2001.

**SPECIAL INSTRUCTIONS TO THE INTERMEDIARIES FOR PUBLISHING THE PM:** The intermediaries are required to distribute the content of this PM to all the hospitals immediately upon receipt of the PM.

**Attachment**

1089  1-11-2000        HCFA Manual Revisions—Transmittals        **402,359**

| TYPE OF DAY | DESCRIPTION | ELIGIBLE TITLE XIX DAY |
|---|---|---|
| General Assistance Patient Days | Days for patients covered under a State-only (or county-only) general assistance program (whether or not any payment is available for health care services under the program). These patients are not Medicaid-eligible under the State plan. | No. |
| Other State-Only Health Program Patient Days | Days for patients covered under a State-only health program. These patients are not Medicaid-eligible under the State plan. | No. |
| Charity Care Patient Days | Days for patients not eligible for Medicaid or any other third-party payer, and claimed as uncompensated care by a hospital. These patients are not Medicaid-eligible under the State plan. | No. |
| Actual 1902(r)(2) and 1931(b) Days | Days for patients eligible under a State plan based on a 1902(r)(2) or 1931(b) election. These patients are Medicaid-eligible under the Title XIX State plan under the authority of these provisions, which is exercised by the State in the context of the approved State plan. | Yes. |
| Medicaid Optional Targeted Low Income Children (CHIP-related) Days | Days for patients who are Title XIX-eligible and who meet the definition of "optional targeted low income children" under section 1905(u)(2). The difference between these children and other Title XIX children is the enhanced FMAP rate available to the State. These children are fully Medicaid-eligible under the State plan. | Yes. |
| Separate CHIP Days | Days for patients who are eligible for benefits under a non-Medicaid State program furnishing child health assistance to targeted low-income children. These children are, by definition, not Medicaid-eligible under a State plan. | No. |
| 1915(c) Eligible Patient (the "217" group) Days | Days for patients in the eligibility group under the State plan for individuals under a Home and Community Based Services waiver. This group includes individuals who would be Medicaid-eligible if they were in a medical institution. Under this special eligibility group, they are Medicaid-eligible under the State plan. | Yes. |
| Retroactive Eligible Days | Days for patients not enrolled in the Medicaid program at the time of service, but found retroactively eligible for Medicaid benefits for the days at issue. These patients are Medicaid-eligible under the State plan. | Yes. |
| Medicaid Managed Care Organization Days | Days for patients who are eligible for Medicaid under a State plan when the payment to the hospital is made by an MCO for the service. An MCO is the financing mechanism for Medicaid benefits, and payment for the service through the MCO does not affect eligibility. | Yes. |
| Medicaid DSH Days | Days for patients who are not eligible for Medicaid benefits, but are considered in the calculation of Medicaid DSH payments by the State. These patients are not Medicaid-eligible. Sometimes Medicaid State plans specify that Medicaid DSH payments are based upon a hospital's amount of charity care or general assistance days. This, however, is not "payment" for those days, and does not mean that the patient is eligible for Medicaid benefits or can be counted as such in the Medicare formula. | No. |